Filed 2/13/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B330473 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA040838-01) |
| v. | |
| JUAN LARA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Terrell, Judge. Affirmed in part, reversed in part, and remanded for resentencing.

Peter S. Westacott, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2002, pursuant to a plea agreement, Juan Lara was convicted of two counts of attempted murder (Pen. Code,[1] § 664/187, subd. (a)). He was sentenced to 29 years 4 months in state prison. In 2023, pursuant to section 1172.6, the trial court vacated Lara's attempted murder convictions and redesignated them as one count of shooting at an inhabited dwelling (§ 246) and three counts of assault with a firearm (§ 245, subd. (a)(2)). Lara appeals the convictions of three counts of assault with a firearm. We affirm one count of assault with a firearm and reverse the other two.

**FACTUAL AND PROCEDURAL BACKGROUND**

After a March 2002 drive-by shooting, Lara was charged by information with four counts of attempted murder and one count of evading the police. The victims of the attempted murders were identified as John Does 1 through 4. For each attempted murder, it was alleged the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and a principal personally used and intentionally and personally discharged a firearm within the meaning of sections 12022.53, subdivisions (b), (c), and (e)(1).

## I. *Preliminary Hearing*

At the preliminary hearing in May 2002, the People presented four witnesses, all Los Angeles Police Department officers. The first witness, Philip Clarke, testified he noticed a brown Oldsmobile stopped in the street on Glenoaks Boulevard on March 17, 2002. As Clarke approached the Oldsmobile in his patrol car, he saw the passenger point a handgun out the window

---

[1] Undesignated statutory references are to the Penal Code.

and begin shooting into a house. Clarke identified the shooter as Rafael Macias.

Clarke testified that after the shots were fired, Lara, the driver of the Oldsmobile, looked in Clarke's direction, mouthed a profanity, and then drove away at a high rate of speed. A pursuit ensued, during which Lara exceeded the speed limit, failed to stop for a stop sign, and crossed into opposing traffic, forcing other cars to take evasive action to avoid a collision. During the chase, Macias raised the firearm above his shoulders so Clarke could see it through the rear window. Clarke saw Macias replace the gun magazine and "rack[] the action" of the weapon.

According to Clarke's preliminary hearing testimony, the Oldsmobile lost traction on the road and came to a stop when Lara unsuccessfully attempted to turn. Lara and Macias fled on foot. Lara was apprehended later that day, and Clarke identified him at a field show-up.

Investigating officer Efren Gutierrez testified to statements made to him by a witness named Maria Amaya during an interview.[2] According to Gutierrez, Amaya said she had been the passenger of a car traveling behind the Oldsmobile on Glenoaks Boulevard. Gutierrez testified Amaya told him she saw the Oldsmobile slow to a stop and the front passenger extend his arm out of the vehicle and fire numerous rounds. Amaya told Gutierrez the gun was pointed toward the front of the house.

---

[2] This testimony, although hearsay, was admissible at the preliminary hearing pursuant to section 872, subdivision (b), which permits law enforcement officers with specific experience or training to testify to out of court statements of declarants, which are offered for the truth of the matter asserted.

The prosecutor asked if Amaya told Gutierrez whether anyone "was in the front of the house in the area at which the firearm was pointed."

Gutierrez said yes, Amaya "said there was three people and the fourth person was in a wheelchair."

"So three people who weren't in a wheelchair and one person in a wheelchair, who the gun, according to her, was pointed at?" asked the prosecutor.

"That's correct," Gutierrez responded. Gutierrez testified Amaya said the front passenger fired several rounds.

The final two witnesses were gang investigators who provided evidence to support the gang enhancement allegation, including that Lara had identified himself as a member of a gang that was the rival of the gang that congregated at the Glenoaks Boulevard residence. One of the two gang officers testified she had not been directly involved with the investigation of the shooting but had assisted by setting up a perimeter and interviewing the mother of one of the witnesses at the hospital.[3]

At the close of the preliminary hearing, the court found the People had presented sufficient evidence to believe Lara was guilty of the charged offenses and enhancements.

---

[3] Disturbingly, the Attorney General misrepresents the record when he claims that a gang expert testified at the preliminary hearing "that a victim was hospitalized because of the shooting." The gang expert testified only that she interviewed a witness's mother at the hospital, saying nothing about victims, the shooting causing injuries, or anyone being hospitalized as a result of the shooting.

## II. Plea Agreement

In November 2002, Lara agreed to plead no contest to two counts of attempted murder and to admit the gang enhancement allegation (§ 186.22, subd. (b)) and a firearm enhancement allegation (§ 12022.53, subds. (c) and (e)(1)) with respect to one count in exchange for the dismissal of the remaining charges and a sentence of 29 years 4 months. The prosecution did not describe the factual basis for the plea. Nor did Lara make any specific admissions, but his trial counsel stipulated to a factual basis for the charges and the enhancement allegations.

## III. Petition for Resentencing

In November 2021, Lara petitioned to vacate his attempted murder convictions and to obtain resentencing under former section 1170.95 (now codified as section 1172.6) on the ground that he could no longer be convicted of attempted murder after changes to the law. With the parties' agreement, the trial court issued an order to show cause.

The parties stipulated Lara's attempted murder convictions should be vacated and redesignated. Although the parties agreed Lara should be resentenced pursuant to section 1172.6, subdivision (e), they did not agree on the appropriate offenses at redesignation. Lara argued for the convictions to be redesignated as a single count of felony assault. The People initially contended the two convictions should be redesignated as four counts of shooting at an inhabited dwelling. However, after Lara argued that as a matter of law, shooting at an inhabited dwelling was a one-count offense completed upon the firing of the firearm at the dwelling regardless of the number of people in the area, the People revised their recommendation and urged in supplemental

5

briefing that Lara's offenses should be redesignated as one count of shooting at an inhabited dwelling and three counts of assault with a firearm (§ 245, subd. (a)(2).) Lara contended in his supplemental briefing that he could not be convicted of any assaults with a firearm because the only evidence that would support such charges was Amaya's hearsay statement related by Gutierrez at the preliminary hearing, and this evidence, while admissible at the preliminary hearing under section 872, subdivision (b), was expressly declared inadmissible in the section 1172.6 resentencing context by section 1172.6, subdivision (d)(3).

After hearing argument by the parties, the trial court concluded the redesignated offenses had to be proven by the People beyond a reasonable doubt, Gutierrez's hearsay testimony concerning the Amaya interview was admissible at the redesignation hearing because hearsay is generally admissible at sentencing hearings, and the People had met their burden to show beyond a reasonable doubt that Lara was guilty of one count of shooting at an inhabited dwelling and three counts of assault with a firearm. The court vacated the attempted murder convictions and enhancements, redesignated one attempted murder (count 1) as a violation of section 246 (newly added count 6), and then, in its own words, "add[ed]" three violations of section 245, subdivision (a)(2) (newly added counts 7 through 9).

The court imposed the high term of seven years for count 6 and consecutive terms of one year for each of the remaining new counts, for a total sentence of 10 years. Lara's custody credits far exceeded this sentence, so he was not remanded into custody. The court placed Lara on parole for one year. He appeals.

6

## DISCUSSION

Lara does not challenge the court's redesignation of one of the attempted murder convictions as a conviction for shooting at an inhabited dwelling. He does not contest the general principle that the second attempted murder conviction could potentially be redesignated as an assault with a firearm, but he argues the redesignated offense here was not supported by sufficient admissible evidence. Finally, he argues the court had no authority to add two additional counts of assault with a firearm when it redesignated his two attempted murder convictions.

I.   ***Applicable Law***

A.   <u>Relevant Statutes</u>

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending sections 188 and 189. (Stats. 2018, ch. 1015, § 2, 3; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Senate Bill 1437 also created former section 1170.95 (now codified as section 1172.6), which established a procedure by which defendants convicted of murder under prior law may petition for resentencing in the trial court if they believe they could not be convicted of that crime after the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.) Petitions under section 1172.6 address convictions where a defendant was

7

not the killer but was held vicariously liable on one of several theories of liability identified in the statute.  (*Lewis*, *supra*, 11 Cal.5th at pp. 957, 967.)  Although Senate Bill 1437 afforded relief only to petitioners convicted of murder, Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) amended Senate Bill 1437 to explicitly afford relief to persons convicted of attempted murder and manslaughter.

"A successful petitioner is entitled to have the murder 'conviction, and any allegations and enhancements attached to the conviction' vacated and to be 'resentenced on the remaining charges.'  ([§ 1172.6], subd. (d)(3).)  But a successful petitioner who was charged with murder 'generically, and the target offense was not charged' is entitled to have the murder conviction 'redesignated' as 'the target offense' of the natural and probable consequences theory—or the 'underlying felony' of the felony murder—and to be resentenced accordingly."  (*People v. Arellano* (2024) 16 Cal.5th 457, 464 (*Arellano*); § 1172.6, subd. (e).)

Section 1172.6 sets forth the procedure for resentencing petitions.  The process begins with the petitioner filing a petition asserting (1) they were convicted under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) they were convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which they could have been convicted of murder, attempted murder, or manslaughter; (3) they could not presently be convicted of murder, attempted murder, or manslaughter

8

because of the changes to the law by Senate Bill 1437.  (§ 1172.6, subd. (a)(1)–(3); *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)

After the appointment of counsel and briefing as provided by statute, the court holds a hearing to determine whether the petitioner has made a prima facie case for relief.  (§ 1172.6, subds. (b), (c).)  If the petitioner makes a prima facie showing of entitlement to relief, the court issues an order to show cause.  (*Id.*, subd. (c).)

Pursuant to the order to show cause, unless the parties stipulate the petitioner is entitled to resentencing, an evidentiary hearing is held at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner remains guilty of murder, attempted murder, or manslaughter under California law despite the statutory changes of Senate Bill 1437.  (§ 1172.6, subd. (d)(1)–(3).)  At the hearing, "[t]he admission of evidence . . . shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3); see *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158–1159 [preliminary hearing transcript is admissible at the evidentiary hearing, but not evidence

9

admitted at the preliminary hearing pursuant to section 872, subd. (b)].)

If the prosecution fails to sustain its burden of proof, the prior conviction and any allegations and enhancements attached to the conviction are vacated and the petitioner is resentenced on the remaining charges. (§ 1172.6, subd. (d)(3).) Section 1172.6, subdivision (e) provides, "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged." "What matters for purposes of [section 1172.6,] subdivision (e)'s requirement that 'the murder was charged generically' and the underlying felony or target offense 'was not charged' is that the defendant was neither convicted of the underlying felony or target offense nor was either crime actually litigated." (*Arellano*, *supra*, 16 Cal.5th at p. 474, fn. 5.)

Section 1172.6 is based on the idea that "individuals not proven to have had the requisite level of malice should be convicted of the underlying felony supported by the evidence, not murder. This theory presupposes that the evidence presented at trial clearly indicates what target offense the petitioner committed, even if that offense was not charged." (*People v. Del Rio* (2023) 94 Cal.App.5th 47, 53 (*Del Rio*).) The statute, however, does not provide guidance for situations where there was no trial, the petitioner was not convicted of other offenses, and no evidentiary hearing was held concerning the petitioner's entitlement to resentencing. (See *ibid.* ["section 1172.6 does not provide guidance where, as here, a jury did not find the defendant culpable of another offense, and the prosecution was

10

unable to provide admissible evidence of any underlying felonies at the resentencing hearing"].)

B.    Case Law

Several courts have considered aspects of redesignation relevant to the issues presented here.

1.    *In re I.A.*

In *In re I.A.*, in the juvenile delinquency context, the Court of Appeal relied on due process principles to reject the Attorney General's contention that a petitioner who requested redesignation of a generically-charged murder adjudication was precluded from challenging the sufficiency of the evidence to support the redesignated target offense.  (*In re I.A.* (2020) 48 Cal.App.5th 767, 774–776 (*I.A.*).)  Noting juvenile defendants' statutory right to appeal from a wardship adjudication, the *I.A.* court observed that "Full and effective appellate review includes ensuring that any sustained allegations were proven beyond a reasonable doubt at adjudication [citation], and are supported by substantial evidence on appeal."  (*Id.* at p. 775.)  The *I.A.* court considered whether the redesignated offenses were supported by substantial evidence, and finding they were not, reversed the juvenile court's findings.  (*Id.* at pp. 778–780.)

2.    *People v. Howard*

In *People v. Howard*, the trial court redesignated a petitioner's first degree murder conviction as a first degree burglary.  (*People v. Howard* (2020) 50 Cal.App.5th 727, 730 (*Howard*).)  On appeal, the Court of Appeal considered whether the trial court properly designated the burglary as in the first degree, or whether it should have been in the second degree.

(*Ibid*.)  The *Howard* court held the trial court properly redesignated the offense as a first degree burglary "because the evidence at trial established—beyond dispute—that defendants burglarized a residence."  (*Ibid*.)  Specifically, the evidence presented to the jury established that the victim had been shot in her residence during a home invasion burglary; defense counsel had even acknowledged the victim was " 'murdered in her home' " during a burglary.  (*Id*. at p. 737.)  The Court of Appeal declined to delineate the scope of the evidence that a court may consider when redesignating an offense under former section 1170.95, subdivision (e), now section 1172.6, subdivision (e), but it "question[ed] the practicality of requiring a trial court to ignore evidence established at trial when designating the underlying felony."  (*Id*. at p. 738.)

The *Howard* court interpreted the contrast between the detailed procedure of what is now section 1172.6, subdivision (d)(3) concerning the conduct of an evidentiary hearing and the comparatively little guidance given in subdivision (e) about the redesignation as indicating "the Legislature knew how to circumscribe the court's redesignation decisionmaking power and declined to do so.  Comparing these provisions supports our conclusion that the Legislature intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e)."  (*Howard*, *supra*, 50 Cal.App.5th at p. 739.)  The *Howard* court found this flexibility in redesignation to be consistent with the statute's stated purpose, "to 'eliminat[e] lengthy prison sentences which have been declared incommensurate with the culpability of defendants such as [Howard],' and instead punish a defendant according to his ' "own level of individual culpability." ' "  (*Ibid*.)  The *Howard* court

concluded the trial court could designate the greater degree of the burglary offense "when the evidence at trial shows the commission of the greater degree." (*Id*. at p. 738.)

### 3. *People v. Watson*

In *People v. Watson*, the petitioner requested redesignation of the second degree murder to which he had pleaded guilty. (*People v. Watson* (2021) 64 Cal.App.5th 474, 478 (*Watson*).) Watson testified at the evidentiary hearing on the resentencing petition, describing an incident in which he and two accomplices went to a hotel room for the purpose of taking the occupant's money. (*Id*. at pp. 479, 486.) One of Watson's accomplices fatally stabbed the victim when he resisted, and the three men fled with the victim's wallet. (*Id*. at p. 479.) The court redesignated Watson's conviction as both first degree burglary and first degree robbery. (*Id*. at p. 480.)

On appeal, it was uncontested that both burglary and robbery underlay Watson's felony murder conviction; the question before the court was whether the trial court had the power to redesignate the murder conviction as both underlying felonies. (*Watson*, *supra*, 64 Cal.App.5th at p. 483.) The Court of Appeal held Watson's offense was properly redesignated as both robbery and burglary based on the statute's text, context, legislative history, and purpose. (*Ibid*.)

As to the statute's text, the *Watson* court noted that section 7 provides that the singular includes the plural when construing the language of the Penal Code. In light of section 7, the court concluded that although the statute referred to redesignating a murder conviction as its "underlying felony," the term "underlying felony" was susceptible of either singular or plural meaning depending on context. (*Watson*, *supra*, 64 Cal.App.5th

13

at p. 485.)  Noting that both the facts of many cases and the language of the pattern felony-murder jury instruction contemplate the not-infrequent circumstance in which a killing occurs during the commission of more than one felony, the court concluded that it was reasonable to interpret the term "underlying felony" as including a plural meaning as well as a singular one.  (*Id*. at pp. 485–487.)  Accordingly, the Court of Appeal found "[t]he plain language of the statute thus confirms that the Legislature did not intend to require courts to designate only one felony in all cases."  (*Id*. at p. 487.)

The court found the overall statutory context supported reading the statute in this broad manner.  (*Watson*, *supra*, 64 Cal.App.5th at p. 487.)  In this regard, the court agreed with *Howard* that reading former section 1170.95 (now section 1172.6), subdivisions (d)(3) and (e) together "reflects a legislative intent to grant trial courts flexibility in designating the underlying offense for resentencing purposes."  (*Watson*, at p. 488.)  Therefore, the *Watson* court concluded, interpreting subdivision (e) as "requir[ing] a court to redesignate a vacated murder conviction as only one underlying felony—even when the evidence shows beyond dispute the commission of more than one underlying felony—would run directly contrary to this principle." (*Id*. at p. 488.)

Finally, the *Watson* court found the legislative history of Senate Bill 1437 confirmed "the Legislature's intent to restore, within the context of felony-murder liability, the ' "normal legislative policy of examining the individual state of mind" ' and affording defendants convicted of murder ' "fine judicial calibration" ' with respect to punishment."  (*Watson*, *supra*, 64 Cal.App.5th at pp. 491–492.)  To align and remain consistent

14

with this legislative purpose, the redesignation statute had to be interpreted in a way that "does not eliminate the discretion of the courts to designate more than one felony when necessary to 'calibrate' a defendant's punishment to his or her culpability." (*Id.* at p. 492.)

Analyzing the facts of the case, the court observed that "Watson testified he and his two accomplices entered Castle's hotel room with the specific intent to grab him and steal money from him," and "[t]his evidence establishes beyond a reasonable doubt" and "beyond dispute" that he aided and abetted both a burglary and a robbery prior to the killing. (*Watson, supra,* 64 Cal.App.5th at pp. 486, 492.) As in *Howard*, redesignating the murder as both a robbery and a burglary "calibrated Watson's punishment to his culpability for committing both of those crimes." (*Id.* at p. 492.) The alternative, redesignating the murder as only one offense, would "run contrary to the express purposes of the statute" and "would bestow a windfall on Watson, who has already been afforded the ' "ameliorative benefits" ' of the statute." (*Ibid.*)

### 4. *People v. Silva*

The trial court in *People v. Silva* redesignated Silva's two convictions of first degree murder as six first degree home invasion robberies or attempted robberies based on the number of robbery victims alleged in the original, superseded information, even though Silva was never tried or convicted of any of the robberies, nor did the jury make any findings against him as to any of them. (*People v. Silva* (2021) 72 Cal.App.5th 505, 509–510, 512 (*Silva*).) In *Silva*, the original information included two murder counts; six robbery charges, each corresponding to a person who was alleged to have been in the house during the

15

home invasion robbery; and four counts of kidnapping to commit another crime.  (*Id*. at p. 512.)  By the time of Silva's trial, however, the information had been amended to charge him with only the two murders, a firearm sentence enhancement, and a prison prior.  (*Ibid*.)  No robberies were charged, but the jury was instructed on robbery, burglary, and kidnapping.  (*Ibid*.)

The jury convicted Silva of both murders; there were no jury findings specifying any felony the jury found true on the basis of the felony murder instruction.  (*Silva*, *supra*, 72 Cal.App.5th at p. 513.)  The jury found the firearm enhancement true as to one defendant, but not as to Silva.  (*Ibid*.)

Silva petitioned for resentencing after Senate Bill 1437 was enacted.  (*Silva*, *supra*, 72 Cal.App.5th at p. 513.)  The People conceded Silva's eligibility for resentencing, and in their resentencing memorandum asked the trial court to revive the robbery charges from the original information and the firearm enhancements the jury had rejected at trial.  (*Id*. at pp. 513–514.)  The trial court redesignated the offenses as five home invasion robberies in concert and one attempted home invasion robbery in concert.  (*Id*. at p. 515.)

On appeal, the Court of Appeal, following *Howard*, held the trial court had the factfinding power to redesignate the murders as home invasion robberies in concert rather than as second degree robberies when this was commensurate with the petitioner's individual culpability based on the evidence at trial.  (*Silva*, *supra*, 72 Cal.App.5th at pp. 518–520.)  The *Silva* court held the prosecution has the burden of proving any redesignated crimes "because designation of a new crime in lieu of a murder conviction is analogous to a criminal conviction."  (*Id*. at p. 526.)  The prosecution's proof of the underlying felony or target offense

16

"must be found exclusively in the record of conviction" or in other evidence the petitioner stipulates to being considered. (*Id*. at p. 527.) The court declined to determine what standard of proof was applicable at redesignation because under any standard, the proof in this case was "beyond any dispute." (*Ibid*.) Specifically, the transcripts from Silva's trial "unquestionably contain[ed] evidence supporting 'beyond any dispute'" the trial court's determination that what had transpired was a home invasion robbery with other participants and multiple victims. (*Id*. at pp. 527–528.)

As for redesignating two murder convictions as more than two robberies, the *Silva* court reasoned that "[i]f a judge may redesignate a murder as a crime that was never charged, as implicit in [former section 1170.95, now section 1172.6] subdivision (e), we see no reason why he or she cannot redesignate a murder as a charge once made but dropped in circumstances where the dismissal was not for lack of evidence, but in reliance on the felony-murder rule then in effect." (*Silva, supra*, 72 Cal.App.5th at p. 530.) Therefore, "[i]n cases such as Silva's, in which additional counts of the underlying felony have once been charged but no verdict has been rendered, the judge must make factual findings of guilt just as if the underlying felony had never been charged." (*Ibid*.) Looking to the trial transcripts, the court concluded that because the robberies all occurred "as part of one continuous transaction during which both killings transpired," the robberies were "collectively the underlying felonies" of the two murders of which Silva had been convicted and were properly redesignated as the felonies underlying the murders. (*Id*. at p. 528.) "The focus is on achieving a just sentence—not making sure the redesignated

17

offenses line up numerically with the vacated murder convictions." (*Id*. at p.532.)

### 5. *People v. Arellano*

In *Arellano*, the Supreme Court curtailed resentencing courts' discretion at redesignation, holding that no allegations or sentence enhancements may be imposed when redesignating an offense pursuant to section 1172.6, subdivision (e) unless they were pled and proven to the trier of fact or by the defendant's admission in open court. (*Arellano, supra*, 16 Cal.5th at p. 464.)

The *Arellano* Court observed that section 1172.6, subdivision (d)(3) instructs the court to resentence a successful petitioner only on the remaining charges, "not charges that *could have been* established by the evidence," and noted nothing in section 1172.6 suggests a different rule when the trial court identifies the target offense or felony underlying a vacated conviction under section 1172.6, subdivision (e). (*Arellano, supra*, 16 Cal.5th at p. 470.) Under section 1172.6, subdivision (e), the task of the resentencing court is to redesignate the murder conviction as its target offense or underlying felony; the statute does not contemplate the addition of an enhancement or allegation that was not previously found to be true. (*Arellano*, at p. 470.)

The Supreme Court noted that section 1172.6, subdivision (d)(3) discusses allegations and enhancements, demonstrating the Legislature knows how to include them in this process when it so desires. (*Arellano, supra*, 16 Cal.5th at p. 470.) The Legislature's choice in section 1172.6, subdivision (e) not to expressly authorize courts to "make findings and impose uncharged and unproven allegations and enhancements" when redesignating an offense suggested to the Supreme Court that

the Legislature did not intend to grant the courts that authority. (*Arellano*, at pp. 470–471.)

The Supreme Court observed sentence enhancements and allegations differ from underlying felonies or target offenses in that the existence of an underlying felony or target offense is an essential predicate for relief under section 1172.6. (*Arellano, supra*, 16 Cal.5th at pp. 474–475.) "Consequently, the 'target offense or underlying felony' under section 1172.6, subdivision (e) is the offense or felony that was the predicate for relief in the first place—i.e., the offense or felony that supported the prosecution's theory of felony murder." (*Ibid*.) Identifying the underlying felony is appropriate for a resentencing proceeding, but deciding whether to impose uncharged and unproven enhancements and allegations would "more closely resemble a new prosecution." (*Id.* at p. 475.) The Supreme Court found it unlikely the Legislature had intended to confer upon the prosecution the ability to "effectively revisit its charging decisions for . . . sentencing allegations and enhancements every time a petitioner succeeds in setting aside a murder conviction under section 1172.6," or to "burden superior courts with this degree of factfinding in section 1172.6 resentencing proceedings." (*Id.* at p. 476.)

## II.  *Analysis*

The parties agreed in the trial court that one of the counts of attempted murder should be redesignated as a conviction for shooting at an inhabited dwelling, and that determination is not challenged on appeal. At issue are the three counts of assault with a firearm. We conclude the court did not err by redesignating one of the attempted murder convictions as an assault with a firearm, and this conviction is supported by

19

substantial evidence.  However, we conclude that the court erred when it imposed two new convictions for assault with a firearm.[4]

When murder or attempted murder was charged generically and no target offense was charged, as is the case here, section 1172.6, subdivision (e) requires the court to identify the target offense or underlying felony underlying the murder or attempted murder conviction, and to redesignate the conviction as that target offense or underlying felony.  *Arellano* confirms the target offense or underlying felony for purposes of section 1172.6, subdivision (e) is "the offense or felony that was the predicate for relief in the first place—i.e., the offense or felony that supported the prosecution's theory of . . . murder." (*Arellano*, *supra*, 16 Cal.5th at pp. 474–475.)

What does the record of conviction tell us about the target offense[5] underlying the People's theory of two attempted

---

[4]     The Attorney General argues the case is moot because Lara has been released from custody and granting his requested relief would have no practical effect.  We disagree.  Release from custody was no bar to California Supreme Court review of the resentencing order under section 1172.6, subdivision (e) in *Arellano, supra*, 16 Cal.5th at p. 467, and the Attorney General fails to explain why a different result should obtain here, particularly in light of the fact that the trial court's redesignation of offenses resulted in Lara suffering four strike convictions rather than his previous two.  (See also *I.A.*, *supra*, 48 Cal.App.5th at p. 775.)

[5]     "An 'underlying felony' refers to the felony underlying a felony-murder theory [citations], and the 'target offense' refers to the offense the natural and probable consequence of which was murder." (*Arellano*, *supra*, 16 Cal.5th at p. 470.)  As California has no crime of attempted felony murder (*People v. Billa* (2003)

20

murders?  (*Silva, supra*, 72 Cal.App.5th at p. 527 [proof of the underlying offense must come from the record of conviction].) Where, as here, a court must redesignate a generically charged attempted murder conviction obtained by plea to an uncharged target offense, the determination of the target offense involves some inherent judicial factfinding and potential discretion, as the prosecution never identified the target offense underlying its theory of attempted murder as it would have been required to do had the case gone to trial.  (*People v. Prettyman* (1996) 14 Cal.4th 248, 268–269 & fn. 9.)

The evidence here is very limited, as Lara was convicted by plea after the preliminary hearing and no evidentiary hearing was held because the parties stipulated he was entitled to resentencing.  Accordingly, the only available sources of evidence are the change of plea hearing, the plea, and the preliminary hearing transcript.  At the preliminary hearing, Clarke described seeing a car driven by Lara, in which Macias was a passenger, stopped in front of a particular house.  Macias pointed a handgun out the window and "began shooting into [the] house."  Lara then pleaded no contest to two counts of attempted murder, as well as the enhancement allegation that a principal personally and intentionally discharged a firearm, and his counsel stipulated to a factual basis for the charges.  Necessarily encompassed within this plea is an admission that the two counts involved intentional shootings and there were two victims.  Read together, these elements of the record of conviction establish under any standard

_____

31 Cal.4th 1064, 1071, fn. 4), our inquiry is the target offense of the attempted murder convictions.

of proof[6] that the underlying incident was Lara operating the car while Macias intentionally fired a gun, with two individuals as victims of the shooting. Accordingly, the trial court could find the target offenses underlying the two attempted murders were two assaults with a firearm, or, as the court found here, an assault with a firearm and a count of shooting at an inhabited dwelling. The assault with a deadly weapon conviction in count 7 is supported by substantial evidence.[7]

As for the two additional counts of assault with a firearm (counts 8 and 9) added by the trial court, the Attorney General argues, based on *Howard*,[8] that the trial court's "substantial

---

[6] The applicable standard of proof when redesignating an offense under section 1172.6, subdivision (e) is not yet established, but the prosecution met its burden with respect to count 7 regardless of the standard of proof. (See *Silva, supra*, 72 Cal.App.5th at p. 527.)

[7] While the hearsay Gutierrez related at the preliminary hearing would also support this analysis of the target offenses underlying the attempted murder convictions, it is not clear whether hearsay admissible at a preliminary hearing pursuant to section 872, subdivision (b) may be considered when redesignating offenses under section 1172.6, subdivision (e). We need not resolve that question here, as the evidence supports the trial court's redesignation of counts 6 and 7 without relying upon that hearsay testimony.

[8] The Attorney General repeatedly insists *Howard* is "binding precedent," but that is not the law. " 'A decision of a court of appeal is not binding in the courts of appeal.' " (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315, fn. 4; see *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193

latitude" in selecting offenses at resentencing includes the ability to impose "previously uncharged or dismissed counts or enhancements," in keeping with the statute's purpose of ensuring a new sentence that is commensurate with the petitioner's culpability. *Arellano* definitively rejected the argument that the trial court may impose uncharged or dismissed enhancements at resentencing (*Arellano*, *supra*, 16 Cal.5th at p. 464); and while the *Arellano* Court expressly declined to address the specific questions presented in *Howard*, *Watson*, and *Silva* (*id*. at p. 474), in our view the Supreme Court's circumscription of resentencing discretion in *Arellano* undermines the reasoning of *Howard*, *Watson*, and *Silva*.[9]

   *Howard* based its view that trial courts have broad flexibility at resentencing when identifying underlying felonies on the wording of former section 1170.95, subdivision (e) and the statute as a whole. (*Howard*, *supra*, 50 Cal.App.5th at pp. 738–739.) The court explained that if the Legislature had intended to require the trial court to impose the lesser degree of a felony offense at resentencing, " 'it easily could have done so,' " but the Legislature did not impose any such limitation. (*Id*. at p. 738.) The *Howard* court described former section 1170.95, subdivision (d)'s specific delineation of the burden of proof and the evidence

---

["there is no horizontal stare decisis in the California Court of Appeal"].)

[9]    *Arellano* was decided before the Attorney General filed the respondent's brief in this matter. Unfortunately, the Attorney General did not discuss or even acknowledge the *Arellano* decision, let alone take its holding into account when formulating arguments. Nor did Lara address the decision in his reply brief.

that may be considered in determining a petitioner's eligibility for resentencing, and noted, "Subdivision (e) contains no such language.  Reading subdivisions (d)(3) and (e) together suggests the Legislature knew how to circumscribe the court's redesignation decisionmaking power and declined to do so.  Comparing these provisions supports our conclusion that the Legislature intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e)." (*Id*. at p. 739.)  The *Howard* court identified former section 1170.95, subdivision (d)(1)'s provision that the new sentence cannot be greater than the original sentence as the only limitation on a court's resentencing discretion. (*Id*. at pp. 741–742.)[10]

But where *Howard* interpreted the Legislature's silence in section 1170.95, subdivision (e), now section 1172.6, subdivision (e), as an intent to bestow broad flexibility and few limits on the trial court, *Arellano* clarified that the Legislature's choice not to confer specific powers in that subdivision actually suggests a legislative intent *not* to bestow them. (*Arellano*, *supra*, 16 Cal.5th at pp. 470–471.)  "That the Legislature did not even

---

[10]     *Watson* and *Silva* followed the *Howard* analysis. (*Watson*, *supra*, 64 Cal.App.5th at p. 488 ["We agree with the *Howard* court's reasoning that reading section 1170.95, subdivisions (d)(3) and (e) together reflects a legislative intent to grant trial courts flexibility in designating the underlying offense for resentencing purposes," and requiring designation of "a vacated murder conviction as only one underlying felony . . . would run directly contrary to this principle"]; *Silva*, *supra*, 72 Cal.App.5th at p. 532 [" 'the only limitation' " at resentencing is that the new sentence cannot exceed the original sentence, relying on *Howard*].)

mention uncharged and unproven allegations and enhancements—let alone articulate any procedures for identifying and proving the truth of such allegations and enhancements—is a significant indication that courts lack the authority to litigate and then impose such allegations and enhancements during the redesignation and resentencing phase." (*Id*. at pp. 471–472.)  In light of *Arellano*, we do not believe section 1172.6, subdivision (e) confers the expansive latitude posited by *Howard*, its progeny, and the Attorney General here.

Like the Attorney General in this case, the *Howard*, *Silva*, and *Watson* courts also found support for their broad views of redesignation discretion in former section 1170.95's legislative purpose of punishing defendants in a manner commensurate with their own level of personal culpability.  (*Howard*, *supra*, 50 Cal.App.5th at p. 739; *Watson*, *supra*, 64 Cal.App.5th at pp. 488, 492; *Silva*, *supra*, 72 Cal.App.5th at p. 532.)  In *Arellano*, the Attorney General relied on the principle of commensurate punishment to argue in favor of permitting the imposition of uncharged, unproven enhancements at redesignation.  (*Arellano*, *supra*, 16 Cal.5th at p. 476.)  The *Arellano* Court, however, rejected this argument, pointing out that the statutory scheme already fulfills its purpose of ensuring commensurate punishment, without reading additional discretion into the statute: "[T]he Legislature sought to 'fairly address[ ] the culpability of the individual,' " but it sought to do so "in a *particular* way: by 'amend[ing] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who

25

acted with reckless indifference to human life.' " (*Ibid*.)  The Supreme Court held the Legislature's intent to ensure proportional punishment did not suggest a discretion "so unbounded as to direct courts to evaluate culpability anew by adding enhancements and allegations to the underlying felony or target offense that were not previously charged and then proven at trial." (*Ibid*.)  We believe the same reasoning applies with respect to adding uncharged and unlitigated offenses when redesignating under section 1172.6, subdivision (e): Whatever flexibility and discretion the trial court has in redesignating an offense to its target offense or underlying felony, it does not confer the "separate authority to search out and impose" convictions for additional offenses that are not the target offense or underlying felony of the vacated murder conviction.  (See *Arellano*, at p. 474.)

Under *Arellano*, the target offense or underlying felony for purposes of section 1172.6, subdivision (e) is not any felony that could have been established by the evidence; it is the offense or felony that was the basis of the prosecution's theory of murder in the trial court.  (*Arellano, supra*, 16 Cal.5th at pp. 470, 474–475; see also *People v. Fouse* (2024) 98 Cal.App.5th 1131, 1144 ["courts have interpreted this phrase to mean 'the "offense" upon which liability was based for either the natural and probable consequences doctrine or the felony-murder rule' "].)  *Arellano* teaches that the discretion conferred upon the trial court by section 1172.6, subdivision (e) is limited to the specific task set forth by the statute: In section 1172.6, subdivision (e), the Legislature gave trial courts the authority to redesignate the vacated conviction as its target offense or underlying felony.  Only this and nothing more.

We believe the same analysis applies here. Just as section 1172.6, subdivision (e) "does not contemplate the addition of an enhancement or an allegation that was not previously found to be true" when redesignating an offense under that provision (*Arellano, supra*, 16 Cal.5th at p. 470), we find no indication in the statute that it contemplates the trial court convicting a petitioner of an offense that was not previously litigated or relied on as the basis for one of the offenses that has been vacated. If the Legislature had wanted the prosecutor or the redesignating court to be able to scour the record for charges that could have been brought and litigated but were not, it would have said so. (See *id*. at p. 476.) Instead, it instructed courts to redesignate the vacated conviction as its target offense or underlying felony. (§ 1172.6, subd. (e).)

We take the Legislature at its word (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 ["If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs' "]) and conclude that section 1172.6, subdivision (e) does not confer upon courts the authority to make factual findings and sustain convictions for offenses that are not the target offenses or underlying felonies of the now-vacated convictions. (See *Arellano, supra*, 16 Cal.5th at pp. 469–477.) As one court explained with respect to redesignating an underlying felony, "[I]t is quite clear as a matter of plain language that section 1172.6, subdivision (e) only permits redesignation of a felony-murder conviction to the underlying felony(ies) on which the defendant's felony-murder conviction was *actually* based. . . . It does not refer to any and all felonies the defendant committed,

27

but rather only those that 'underlie' the felony-murder." (*People v. Patterson* (2024) 99 Cal.App.5th 1215, 1225 (*Patterson*).)

Lara pled no contest to two counts of attempted murder of two designated individuals. He did not plead to any other offenses. The target offense underlying the attempted murder of one named person is not two assaults with a firearm on two persons. (*Arellano*, *supra*, 16 Cal.5th at pp. 470, 474–475 [" 'target offense' refers to the offense the natural and probable consequence of which was murder" and is "the offense or felony that was the predicate for relief in the first place—i.e., the offense or felony that supported the prosecution's theory of . . . murder"].) Moreover, Lara's plea in no way included or encompassed an admission that there were more than two victims of his crimes. He was not asked to admit the gun was pointed at four people outside the house when Macias fired or to endorse the truth of preliminary hearing testimony in any way. There was no trial, so no facts beyond those admitted by the plea were ever proven in court. As Lara was not convicted of these additional, non-target offenses, nor were they actually litigated, the trial court lacked the authority to make factual findings and impose convictions on them.[11] (See *Arellano*, at pp. 470–471, 474, fn. 5; *Patterson*,

---

[11] In both *Watson* and *Howard*, the courts expressed concern about bestowing an unfair "windfall" on a petitioner if the court's redesignation discretion were limited. (*Watson*, *supra*, 64 Cal.App.5th at p. 492; *Howard*, *supra*, 50 Cal.App.5th at p. 740.) Our conclusion does not bestow any conceptual or practical windfall on Lara: He remains criminally culpable for both offenses to which he pleaded no contest, now redesignated as their target offenses in light of changes in the law; and he has already served more prison time than would be required by any of the sentences that could be imposed under anyone's

28

*supra*, 99 Cal.App.5th at pp. 1225–1226 & fn. 3 [underlying felony means "the *specific* felony [or potentially, felonies] that *actually* underlied the defendant's murder conviction at trial"].)

But even if we were to agree with the Attorney General that section 1172.6 "authorizes the imposition of previously uncharged or dismissed counts . . . where the underlying facts are proven by the prosecution 'beyond any possible dispute,' " the result would be the same. The evidence here falls far short of proving beyond dispute that Lara was guilty of assault with a firearm against additional victims beyond the two victims whose existence he admitted when he pleaded no contest to two counts of attempted murder.

In *Howard* and *Silva*, the trial court had the benefit of a transcript of the jury trial proving beyond any dispute that the petitioner had committed the redesignated offenses, and in *Watson*, the petitioner's own testimony at the evidentiary hearing on the resentencing petition proved "beyond a reasonable doubt" and "beyond dispute" that he had committed the redesignated offenses. (*Howard*, *supra*, 50 Cal.App.5th at pp. 737–738; *Silva*, *supra*, 72 Cal.App.5th at pp. 527–528; *Watson*, *supra*, 64 Cal.App.5th at pp. 486, 492.) Nothing of the sort exists here. The facts of the case were not litigated. No factfinder received evidence and concluded beyond a reasonable doubt based on admissible evidence that Lara committed any crimes. No evidentiary hearing took place, and Lara did not stipulate to any additional evidence for the court to consider. All that has been established beyond dispute here is a plea to two attempted

interpretation of the law, whether it be the trial court's, the Attorney General's, the petitioner's, or ours.

murders and firearm and gang enhancements. Clarke's testimony at the preliminary hearing does not support the imposition of any counts of assault with a firearm because he did not testify the shooter fired at any people, only at the house. That leaves the preliminary hearing hearsay of an unsworn witness (Maria Amaya), not subject to cross-examination, who told a police officer the shooter pointed the gun at four people. This type of hearsay is admissible at a preliminary hearing (§ 872, subd. (b)), where the showing required is " ' " 'exceedingly low,' " ' " "below even [a] preponderance of the evidence" (*People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 490, 496), but it is not admissible at a trial (Evid. Code, § 1200) or at a resentencing hearing unless another exception to the hearsay rule applies (§ 1172.6, subd. (d)(3))—and the People do not identify any applicable hearsay exception. Contrary to the Attorney General's contention, this hearsay of limited utility and questionable admissibility is hardly proof " 'beyond any possible dispute' " of uncharged, unlitigated crimes. As the *Del Rio* court observed, it "logically makes sense to allow the sentencing court to consult hearsay evidence to determine what other convictions the defendant suffered and whether any of them qualifies as an underlying target offense under section 1172.6 for resentencing purposes. But relying upon hearsay. . . as the entire factual and evidentiary background supporting the conviction of an uncharged, unproven offense seems categorically different." (*Del Rio, supra*, 94 Cal.App.5th at p. 57.)

30

## DISPOSITION

The convictions on counts 6 and 7, shooting at an inhabited dwelling and assault with a firearm, are affirmed.  The convictions on counts 8 and 9, additional counts of assault with a firearm, are reversed.  The matter is remanded for resentencing on counts 6 and 7.

**CERTIFIED FOR PUBLICATION**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

31